UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CHARLES JACKSON FRIEDLANDER, | : |
| Defendant-Movant, | : |
| v. | : No. 12-CV-_____ |
| | : No. 08-CR-318-T-27TGW |
| UNITED STATES OF AMERICA, | : |
| Respondent. | : |

**Prisoner Number & Place of Confinement:**
Reg. No. 50328-018, FCI Petersburg Medium, Petersburg, VA
(Clerk of Court take note: movant is represented by counsel)

## MOTION TO VACATE CONVICTION AND SENTENCE

1. **(a) Name and location of court which entered the judgment of conviction you are challenging.** United States District Court for the Middle District of Florida, Tampa, Florida.

    **(b) Criminal docket or case number (if you know):** 8:08-CR-318-T-27TGW

2. **(a) Date of judgment of conviction (if you know):** Judgment entered July 22, 2009.

    **(b) Date of sentencing:** July 21, 2009.

3. **Length of Sentence.** 360 months' imprisonment.

4. **Nature of crime (all counts).** Child Enticement pursuant to 18 U.S.C. § 2422(b).

5. **(a) What was your plea? (Check one)** Not Guilty

(b) **If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?** N/A

6. **If you went to trial, what kind of trial did you have? (Check one).** Judge and Jury

7. **Did you testify at a pretrial hearing, trial, or post-trial hearing?** Petitioner testified at his first trial, but not at the second trial which resulted in the judgment from which relief is sought.

8. **Did you appeal from the judgment of conviction?** Yes.

9. **If you did appeal, answer the following:**

(a) **Name of court:** United States Court of Appeals for the Eleventh Circuit.

(b) **Docket or case number (if you know):** 09-11354, 09-13811

(c) **Result:** Judgment affirmed. Rehearing not sought.

(d) **Date of result (if you know):** September 3, 2010.

(e) **Citation to the case (if you know):** *United States v. Friedlander*, 395 Fed. Appx. 577 (11th Cir. 2010)

(f) **Grounds raised:**

(1) Double jeopardy; (2) Error in admitting prejudicial photographs and e-mails; (3) Error in permitting detective to testify to ultimate issue that required a conclusion of law; (4) Error in precluding expert testimony regarding clinical diagnoses of pedophilia and sexual sadism and prevalence of sexual fantasy on the Internet; (5) Substantive unreasonableness of sentence.

-3-

**(g) Did you file a petition for certiorari in the United States Supreme Court?** Yes. (Denied April 4, 2011; see *Friedlander v. United States*, 131 S. Ct. 1833 (2011)).

**10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?** No.

**11. If your answer to 10 was "yes," give the following information:** N/A

**12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.**

**GROUND ONE:** For the reasons enumerated in the "supporting facts" below, Charles Jackson Friedlander received ineffective assistance of trial counsel.

**(a) Supporting facts:**

1.   Defendant submits that trial counsel George E. Tragos, Esq. and/or Peter A. Sartes, Esq. committed three acts of ineffective assistance relating to the testimony of Dr. Fred Berlin: (a) failing to adequately inform Dr. Berlin of the nature and purpose of a <u>Daubert</u> hearing, and to prepare him for same, resulting in Dr. Berlin being unable to provide scientific substantiation for his opinions as to the prevalence of sexual fantasy on the Internet; (b) failing to call Dr. Berlin as an expert witness at defendant's second trial; and (c) failing to call Dr. Berlin or submit a memorandum from him in aid of sentencing.

In sum and substance, counsel's omissions were as follows:

a.   Although it was clear from the beginning that (a) Dr. Friedlander's intent

was in issue, and (b) that several of the statements he made during the disputed Internet chats were confabulation, counsel did not serve expert disclosure until well after the court-ordered deadline for such filing. The Court then directed an immediate Daubert hearing on only a few days' notice. Counsel did not adequately prepare Dr. Berlin for the hearing in that, *inter alia*, he did not make clear to Dr. Berlin what a Daubert hearing was and did not alert Dr. Berlin that he would need to have peer-reviewed literature actually at hand to support his opinions. Moreover, because the hearing was ordered on so little notice due to counsel's late disclosure, Dr. Berlin had insufficient time to marshal his resources and gather adequate documentation for his opinions.

During the hearing, Dr. Berlin offered certain opinions concerning the subject of sexual fantasy on the Internet. On cross-examination, he stated that there was scientific support for these opinions, but due to counsel's inadequate preparation, he did not have the relevant scientific literature at hand and was unable to provide specific citations. As a result, the Court ruled that his opinions as to sexual fantasy on the Internet were supported only by his own *ipse dixit* and that he would not be permitted to testify to them. This ruling was upheld on appeal, given that the record did not contain scientific support for these opinions. See United States v. Friedlander, 395 Fed. Appx. 577, 581 (11th Cir. 2010).

Had counsel adequately prepared Dr. Berlin for the hearing, he would have been able to cite, and indeed provide, ample scientific basis for his opinion in the form of the following articles, the majority of which are peer-reviewed:

> Kimberly Young, Understanding Sexually Deviant Online Behavior from

-5-

an Addiction Perspective, Int'l J. Cyber Criminology 2(1): 298-307 (2008) (discussing, *inter alia*, the nature of Internet fantasy, the tendency of certain Internet users to exhibit addictive behavior and dissociation from reality, and noting that "deviant sexual fantasies carried out online do not always originate from individuals with a pre-existing disposition for deviancy");

Andreas Frei et. al., Paedophilia on the Internet: a study of 33 convicted offenders in the Canton of Lucerne, Swiss Med. Weekly 135:488-94 (2005) (noting, *inter alia*, that Internet sexual behavior "may not be a specific risk factor for 'contact' crimes");

Kimberly Young, Profiling Online Sex Offenders, Cyber-Predators and Pedophiles, J. Behav. Profiling 5(1) (2005) (discussing case studies of Internet sexuality, addictive behavior and the nature of Internet fantasy);

Frank Urbaniok et. al., study for Zurich Department of Justice (2009) (noting that Internet sexual behavior without a prior record of sex convictions does not have a statistical correlation to contact offenses against a child)

Milton Diamond et. al., Pornography and Sex Crimes in the Czech Republic, Archives of Sexual Behavior (online journal) (Nov. 30, 2010) (indicating inverse correlation between Internet sexual behavior and contact crimes)

Milton Diamond, Pornography, Public Acceptance and Sex Related

-6-

Crime: A Review, Int'l J. Law & Psych. 32:304-14 (2009) (indicating no correlation or inverse correlation between Internet sexual behavior and contact crimes)

Steven Solberg, Facing the Realities of Fantasy Sex, The Body (online resource) (2002) (discussing the prevalence of "cybersex" and addictive sexual fantasy behavior on the Internet)

Notably, a defendant who is charged in a Section 2422 child enticement case and who asserts that his conduct was fantasy or role-playing, as Dr. Friedlander did, is entitled to present expert testimony concerning the culture of the Internet, including but not limited to sexual fantasy therein. See, e.g., United States v. Joseph, 542 F.3d 13, 21-22 (2d Cir. 2008); United States v. Gladish, 536 F.3d 646, 650 (7th Cir. 2008); accord United States v. Hofus, 598 F.3d 1171, 1180 (9th Cir. 2010) (noting that expert was permitted to testify as to the prevalence of fantasy on the internet and that the defendant lacked the characteristics of a hebophile, albeit not to the ultimate issue of the defendant's intent); United States v. Grauer, 805 F. Supp. 2d 698, 708 (S.D. Iowa 2011) (noting that defense expert testified that the defendant's Internet chats were consistent with fantasy). Consequently, if counsel had adequately prepared Dr. Berlin and enabled him to present a scientific basis for his opinions on Internet fantasy, those opinions would clearly have been admissible.

Moreover, defendant submits that there is a reasonable – i.e., non-negligible – probability that the outcome of the trial would have been different had he permitted to give these opinions. At the time of the trial, defendant was a retired psychologist 79

years of age, with no evidence of sexual behavior on the internet or any other form of child-directed sexual behavior prior to his mid-70s. Defendant had previously worked as a school guidance counselor for many years without any hint of impropriety toward the children at the school. Furthermore, several of the statements defendant made during the internet chats were demonstrably false, including his claim to have abused his son (he had no children) and to have set up a torture room in his basement (he had no basement). In light of these and other factors which were brought out at trial, it is reasonably likely that a jury which had the benefit of Dr. Berlin's expert opinion would have concluded that Dr. Friedlander's behavior was consistent with fantasy – and with attempting to establish a fantasy-based relationship with the adult detective – and that there was reasonable doubt about his guilt.

    b.    Second, counsel failed to call Dr. Berlin at the second trial in order to (a) elicit testimony from him as to the topics on which this Court *did* permit him to testify (i.e., the clinical diagnostic criteria for pedophilia), and (b) preserve defendant's objection to the preclusion of testimony regarding whether he, personally, was a pedophile or sexual sadist within the meaning of those criteria. Defendant recognizes that being a pedophile or sexual sadist is not an *element* of the crime of child enticement. Nevertheless, the fact that defendant does not and did not have such abnormalities is certainly *relevant* to his intent at the time he engaged in Internet chats and telephone conversations and traveled to Tampa, in that someone who is not a pedophile or sexual sadist is less *likely* to commit such acts with the intent to actually engage in sexual contact with a child as opposed to doing so out of fantasy and/or a misguided attempt to

establish a relationship with an adult interlocutor. Hence, defendant submits that there is a reasonable probability that, had Dr. Berlin presented the jury with these diagnostic criteria and had his objection to further diagnostic testimony been preserved, there is a reasonable probability that the jury would have acquitted him or, alternatively, that the Eleventh Circuit would have found the exclusion of defendant's personal diagnosis to be reversible error.

    c.    Third, counsel failed to call Dr. Berlin or submit a report from him in aid of sentencing, at which time the parties and the Court would not have been bound by the rules of evidence and Daubert would not have been an obstacle to the admissibility of his opinions. At that time, Dr. Berlin could have provided mitigating testimony consistent with his pretrial report, namely, that defendant had a strong tendency to confabulate and role-play, that he is not a pedophile or sexual sadist, and that, even granting the jury conviction, defendant's acts were at least partially influenced by his immersion in a world of Internet fantasy. Also, as discussed above, Dr. Berlin could have provided further information to the Court about the prevalence and nature of sexual and other fantasy on the Internet, to place defendant's conduct in that context, and to provide mitigating opinions concerning defendant's future dangerousness. Defendant submits that, had Dr. Berlin's testimony and/or report been offered, there is a reasonable probability that he would have received a materially lower sentence than what he in fact received.

2.    Defendant submits that Mr. Tragos and/or Mr. Sartes were further ineffective in failing to consult with a neurologist and/or neuropsychologist prior to trial and/or sentencing in order to ascertain whether he suffered any brain dysfunction, neural deficits

and/or cognitive deficits that may have rendered him unable to appreciate the nature and quality and/or the wrongfulness of his acts, and/or may have mitigated his guilt at sentencing.

3. Defendant submits that Mr. Tragos and/or Mr. Sartes were further ineffective in failing to call a medical expert and elicit testimony at the second trial, and/or at sentencing, concerning defendant's diabetes and the effect thereof on his conduct in this case. Defendant is a brittle diabetic who is subject to dramatic swings in blood glucose level and is dependent upon medication. As testified to by Dr. Paul DiMarco at the first trial, the effects of diabetes may include, *inter alia*, nerve damage, blurred vision and inability to concentrate. Had this issue been fully explored – i.e., considerably more than what was elicited from Dr. DiMarco at the first trial, and certainly more than the complete lack of attention to the subject at the second trial, and without the misguided focus on erectile dysfunction that characterized Dr. DiMarco's testimony -- the jury would have learned *inter alia* that (a) the defendant's need for medication is frequent, unpredictable and critical to maintaining life, meaning that the fact that defendant traveled to Tampa from Fort Myers *without* such medication indicated that he did not intend to stay, and (b) that defendant's conduct during his videotaped interview with Detective Romanosky was indicative of a lack of concentration and disorientation caused by the fact that he had not eaten and that he had been too long without medication. Defendant submits that a reasonable probability exists that, had the jury known of this information, it would have assessed his videotaped statement differently and also assessed his purpose in traveling to Tampa differently, and that this would have

affected the jury's resolution of the issue of guilt or innocence.

Moreover, defendant submits that, had counsel provided medical documentation of the effects of diabetes at or prior to sentencing, a reasonable probability exists that the Court's sentence would have been materially different.

Please note that the above does not constitute an exhaustive statement of each ground of ineffective assistance of counsel, and that defendant reserves the right to submit further proof concerning each such ground and/or to elaborate upon the underlying facts in greater detail.

**GROUND TWO:** For the reasons enumerated in the "supporting facts" below, Charles Jackson Friedlander received ineffective assistance of appellate counsel.

**(a) Supporting facts:**

Dr. Friedlander's counsel unjustifiably failed to present two meritorious and fully preserved sentencing points on appeal to the Eleventh Circuit, as follows:

1. Prior to sentencing, counsel objected to the imposition of a two-level sentencing enhancement under U.S.S.G. § 2G1.3(b)(2)(B) on the ground that this enhancement, which applies when a defendant "unduly influenced" a minor to commit sexual conduct, does not apply to cases where there are no actual minors. Counsel cited Sentencing Guideline Amendment 732, which provides that the undue influence enhancement "does not apply in a case in which the only 'minor' (as defined in Application Note 1) involved in the offense is an undercover law enforcement officer." Counsel noted that, although the amendment had not yet taken effect at the time of sentencing, it was a "clarifying" amendment and hence should be applied retroactively.

This position was subsequently adopted by the Eleventh Circuit in United States v. Jerchower, 631 F.3d 1181 (11th Cir. 2011). Again, although Jerchower had not yet been decided at the time of Dr. Friedlander's sentencing, the principle upon which it was based – i.e., that clarifying amendments are retroactively applicable – was well established at that time. Moreover, well-established law at the time of defendant's sentencing and direct appeal also made plain that Amendment 732 was in fact a clarifying amendment, because (a) it altered only the commentary rather than the text of the guideline, (b) the Sentencing Commission explicitly stated that the purpose of the amendment was to clarify the scope of the guideline in light of a circuit split, and (c) it clarified a meaning inherent in the original guideline. Accordingly, it was unreasonable for an attorney at the time of the defendant's direct appeal not to recognize the merit of this argument; moreover, the failure to raise it prejudiced the defendant because, had it been raised, it would have resulted in reversal and remand for resentencing in light of Jerchower.

2. Counsel also objected, prior to sentencing, to the use of U.S.S.G. § 2G2.1(d)(1), combined with the grouping rules, to treat the three fictitious minors involved in his Internet chats – i.e., the fictitious girl described by Port St. Lucie Detective Spector and the two fictitious boys described by Detective Romanosky - as separate counts of conviction. At the time of sentencing and direct appeal, there were no cases applying this rule to fictitious minors; moreover, the use of the rule under such circumstances falls comfortably within the general precedent forbidding law enforcement manipulation of sentencing factors.

Additionally, the Port St. Lucie conduct was not "relevant conduct" within the meaning of U.S.S.G. § 1B1.3, because (a) it was not committed as part of the offense of conviction, as preparation for the offense and/or to avoid detection or responsibility for the offense; (b) it was not of a character for which U.S.S.G. § 3D1.2(d) would require grouping of multiple counts; and (c) it was not a harm which resulted directly from the conduct that constituted the offense of conviction. Instead, it was an entirely separate offense that happened to be committed during the same time period; the fact that it was similar in character is not sufficient to render it "relevant."

As such, it was unreasonable for counsel not to recognize and argue the merit of this point, especially since he had already done so in his presentence memorandum and at the sentencing colloquy. Moreover, defendant submits that there is a reasonable probability that, had counsel raised this point on appeal, it would have been decided in his favor by the Eleventh Circuit.

Defendant further notes that both of these points are far stronger than the single sentencing point that Dr. Friedlander's counsel did raise, i.e., that the sentence was substantively unreasonable. It is well settled, and was well known to counsel, that substantive reasonableness review is highly deferential and that a reversal on such grounds is extremely rare. The Eleventh Circuit has only held a sentence in a child sex case to be unreasonable on one occasion, and on that occasion, the court held the sentence to be unreasonably *low*, not unreasonably *high*. Thus, an an attack on two discrete Guideline calculation errors, which are reviewed *de novo* than for abuse of discretion, would have been far more likely to succeed.

-13-

In addition, defendant notes that, had he prevailed on both arguments in the Eleventh Circuit, his Sentencing Guideline offense level would have been reduced by five points, from 41 to 36. This would have resulted in an advisory Guideline range of 188 to 235 months in a criminal history category of I. A sentence of 188 months, less 54 days' annual good time allowance, would result in approximately 13½ years actually served in prison, which, given that other members of Dr. Friedlander's family lived into their nineties, would have given him a chance to be released from prison someday and to die at home. Hence, the prejudice from the ineffective assistance of appellate counsel is bona fide and of constitutional magnitude.

Please note that the above does not constitute an exhaustive statement of each ground of ineffective assistance of appellate counsel, and that defendant reserves the right to submit further proof concerning each such ground and/or to elaborate upon the underlying facts in greater detail.

**13. Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:** The grounds set forth above have never previously been presented to a Federal court. These grounds sound in ineffective assistance of counsel and may hence be raised for the first time in a Section 2255 motion. See Massaro v. United States, 538 U.S. 500 (2003).

**14. Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the judgment you are challenging?** No.

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. N/A

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

   (a) **At preliminary hearing:** N/A

   (b) **At arraignment and plea:** George Tragos, Esq., and Peter Anthony Sartes, Esq., Tragos & Sartes, PL, 601 Cleveland Street, Suite 800, Clearwater, FL 33755.

   (c) **At trial:** George Tragos, Esq., and Peter Anthony Sartes, Esq., Tragos & Sartes, PL,   601 Cleveland Street, Suite 800, Clearwater, FL 33755.

   (d) **At sentencing:** George Tragos, Esq., and Peter Anthony Sartes, Esq., Tragos & Sartes, PL, 601 Cleveland Street, Suite 800, Clearwater, FL 33755.

   (e) **On appeal:** George Tragos, Esq., Tragos & Sartes, PL, 601 Cleveland Street, Suite 800, Clearwater, FL 33755; Talbot D'Alemberte, Florida State University College of Law, 506 West Pensacola Street, Tallahassee, FL 32301.

   (f) **In any post-conviction proceeding:** N/A

   (g) **On appeal from any ruling against you in a post-conviction proceeding:** N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time? No.

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging? No.

**18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.** The judgment of conviction became final when the Supreme Court denied certiorari on April 4, 2011, and this motion is being filed within one year of that date.

Therefore, movant asks that the Court grant the following relief:

a. Direct that an Answer be filed pursuant to Fed.R.Gov. § 2255 P. 4(b); and then, after hearing,

b. Vacate the defendant-movant's conviction and schedule a new trial, or in the alternative,

c. Vacate the defendant-movant's sentence and resentence him, and/or

d. Any other relief to which movant may be entitled.

Dated: April 2, 2012

Respectfully submitted,

LAW OFFICES OF ALAN ELLIS

By  s/ Jonathan Edelstein
JONATHAN EDELSTEIN
(New York Bar No. 2904605)
271 Madison Avenue, 20th Floor
New York, NY 10016
(212) 871-0571
(212) 382-3610 Fax

OF COUNSEL:

Alan Ellis, Esq.
Law Offices of Alan Ellis
1299 Fourth Street, Suite 202
jonathan.edelstein.2@gmail.com
San Rafael, CA 94901
(415) 256-9775
(415) 256-9772 – fax
AELaw1@aol.com

-16-

                        VICTOR D. MARTINEZ, P. A.

By:   */s/ Victor D. Martinez*
       Victor D. Martinez
       Florida Bar No. 0444601
       One Urban Centre, Suite 300
       4830 West Kennedy Boulevard
       Tampa, Florida 33609
       Telephone: (813) 289-0600
       Facsimile: (813) 287-2833
       vmartinez@tampabay.rr.com

**Attorneys for the Defendant-Movant**

## VERIFICATION

Pursuant to 28 U.S.C. § 1746 and Section 2(b) of the Section 2255 Rules, Charles Jackson Friedlander declares, under penalty of perjury, that:

1. I have read the foregoing Motion to Vacate, Set Aside, or Correct Conviction and Sentence, in which I am the defendant-movant.

2. I know that the factual allegations contained in the motion are true.

3. With respect to facts alleged in the motion upon information and belief, I believe these factual allegations to be true.

4. I declare under penalty of perjury that this Verification is true and correct.

_____
Charles Jackson Friedlander

Dated: 02 April, 2012
At: Petersburg, Virginia